AYRES, Judge.
Plaintiff, by this action, seeks to recover of his insurer, and to be reimbursed for, a loss of money entrusted to a messenger for eventual deposit in a bank.
This action is predicated upon the provisions of an insurance policy relating to losses sustained outside the premises of the insured, denominated “Coverage B,” wherein the insurer assumes the obligation
“To pay for loss of money and securities by the actual destruction, disappearance or wrongful abstraction thereof outside the premises while being conveyed by a messenger or any armored motor vehicle company, or while within the living quarters in the home of any messenger.” (Emphasis supplied.)
The defense is that the loss of the money did not occur “while being conveyed by a messenger.”
After trial, plaintiff was awarded judgment for the loss allegedly sustained, but *606 his demands for penalties and attorney’s fees were rejected. From the judgment thus rendered and signed, defendant appealed and plaintiff has answered the appeal praying that he be allowed penalties and attorney’s fees.
Whether plaintiff’s loss of money was sustained “while being conveyed by a messenger” presents, almost entirely, a factual matter. For that reason, the evidence will be reviewed in some detail.
The record contains only the testimony of Vito Cefalu, the messenger, given in a discovery deposition which was offered in evidence on trial of the merits of the case. Cefalu, it may be pointed out, is manager of plaintiff’s restaurant in Shreveport. According to Cefalu’s testimony, late in the afternoon of January 17, 1962, Sansone took from his safe, out of the receipts of the restaurant, $2,500 in cash and delivered the money to him in bills for deposit in a bank the next morning. On receipt of this money Cefalu placed a rubber band around the bills and put the roll in a pocket of his pants. Thereafter, the exact time not being shown but sometime between 4:00 p. m. and 7:00 p. m., Cefalu left the restaurant and went downtown where he talked to some friends. From there he went to a club on Cross Lake, arriving there about 9:30 or 10:00 p. m. On Cefalu’s arrival at the club some ten or twelve persons were already there. Coffee and doughnuts were served and television programs were viewed, after which a dice game was started in which Cefalu participated. Feeling some discomfort with the money in his pants pocket, Cefalu removed the roll from that pocket, counted the money in view of those present, and placed it in a pocket of his coat. Becoming uncomfortably warm during the course of the game, he pulled his coat off, laid it across a chair, and called to a colored porter to hang it up. After preparing sandwiches, requiring some delay, the porter finally came in, took the coat to an adjoining room and hung it on a rack among other coats. The game had been in progress possibly as long as an hour or an hour- and-a-half when the coat was transferred to the rack. The game continued and, after the lapse of another 20 or 30 minutes, Cefalu, so he said, sensing that his pocket was “light,” suddenly “woke up” and, on feeling in his pocket and missing the money, left the game room, searched out his coat on the rack and, on an inspection, discovered that' his money was missing. A search ensued lasting several hours. The porter and others present, including two in the room where the coat was hanging, were questioned. Nevertheless, the money could not be located. The coat rack was shown to be in another room, but just outside the door of the game room and some 15 to 18 feet distant from where Cefalu was sitting.
The facts of the instant case, to which we have referred, are, in our opinion, governed by the pronouncements in the case of Monteleone v. American Employers’ Insurance Co., 239 La. 773, 120 So.2d 70, wherein identically worded provisions of an insurance policy were concerned — identical with the exception noted in the policy in the instant case which contains an additional clause under “Coverage B,” reading:
“ * * * or while within the living quarters in the home of any messenger.”
This clause has no application to the facts of this case. Hence, so far as applicable, the clauses are identical.
In the Monteleone case, the Supreme Court stated:
“Webster’s New International Dictionary defines the word ‘convey’ as follows:
“‘Convey * * * To accompany; esp. to convoy, conduct, guide or lead. Obs. 2. To bear from one place to another; to carry, transport * * * 4. To cause to pass from one place or person to another; to serve as a medium or conduit in carrying (anything) from one place or person to another; to transmit; to transfer,
*607 “The above-cited definitions of the word ‘convey’ all suggest not only ‘the idea of passing from one place to another place’ but also the idea that the thing which is ‘passing from one place to another place’ is being accompanied to its destination. It does not seem to be necessary to an understanding of the word ‘convey’ that there be any indication as to whether the conveying is fast or slow, direct or indirect, or with or without temporary interruptions or periodic rests, for the word standing alone is completely understandable and not a bit vague. In any event, the addition of the words ‘by a messenger’ after the word ‘conveyed’ clarifies, without a doubt, the meaning of the clause which plaintiff claims is ambiguous.
“The word ‘messenger’ is defined by Webster as meaning ‘one who hears a message or does an errand’. Therefore, the addition of the phrase ‘by a messenger’ to the word ‘conveyed’ denotes conveyance by a person on an errand who keeps the property in Ms personal custody at all times. The conclusion that personal custody is required is strengthened by the language of Item 4 of the policy here in question, which reads as follows: ‘Not more than one messenger will have custody of insured property outside the premises at any one time * * *.’
* * * >}s *
“In the case at bar, the fact that plaintiff had intended to return to his home later in the day and take the $2,-160 to the bank cannot be employed to provide coverage under the policy on the theory that the money was still being conveyed by plaintiff, in his capacity as messenger. On the contrary, the insuring clause does not cover intentions but only actualities, that is, while the money is being conveyed by the messenger. And, as already shown, the clause in question, when viewed in the light of other provisions of the policy, clearly indicates that the conveying messenger must have the money in his personal custody at the time of the loss which obviously was not the case here.” (Emphasis supplied, except for underscored “intended.”)
Under the established facts of this case, in accordance with the pronouncements in the cited case, our conclusion is that Cefalu did not at all times have the money entrusted to him as a messenger in his personal possession and custody. Nor was the money in his personal possession or custody at the time of its loss, disappearance, or wrongful abstraction. This is a condition necessary to the establishment of defendant’s liability under the contract of insurance.
Accordingly, the judgment is therefore annulled, avoided, reversed, and set aside, and plaintiff-appellee’s demands are hereby rejected and his suit dismissed at his cost.
Reversed.